People v Smith (2024 NY Slip Op 05416)

People v Smith

2024 NY Slip Op 05416

Decided on October 31, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 31, 2024

Before: Webber, J.P., Oing, Kapnick, Kennedy, JJ. 

Ind No. 5257/11 Appeal No. 2958 Case No. 2018-3135 

[*1]The People of the State of New York, Respondent,
v
Hockeem Smith, Defendant-Appellant.

Caprice R. Jenerson, Office of the Appellate Defender, New York (Will A. Page of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Andrew E. Seewald of counsel), for respondent.

Judgment, Supreme Court, New York County (Melissa Jackson, J., at suppression hearing and on motion to controvert search warrants; A. Kirke Bartley, J., at trial and sentence), rendered June 28, 2017, convicting defendant, after a jury trial, of manslaughter in the first degree and criminal possession of a weapon in the second degree, and sentencing him, as a second violent felony offender, to an aggregate term of incarceration of 25 years to be followed by 5 years of postrelease supervision, unanimously affirmed.
The verdict was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]), and we find no basis to disturb the jury's credibility determinations. The jury had ample basis to conclude that defendant was the individual who shot the victim on the night in question. An eyewitness who was familiar with defendant testified in detail about how he saw defendant shoot the victim. In addition to such testimony, another witness placed defendant nearby at the time of the shooting and corroborated aspects of the eyewitness's account, video footage captured defendant shortly after and near the shooting wearing clothing which matched that of the shooter, defendant made incriminating statements to a witness about how he shot the victim, ballistics established that the gun used in the shooting was the same type as the one the eyewitness saw defendant use, and the People presented evidence demonstrating consciousness of guilt. The jury's acquittal of the murder charges does not warrant a different conclusion, and we find it imprudent to speculate concerning the factual determinations that underlay the verdict (see People v Horne, 97 NY2d 404, 413 [2002]).
The warrant for the search of certain evidence on defendant's cell phone was supported by probable cause and was not overbroad (see People v Gordon, 36 NY3d 420, 429 [2021]; United States v Ulbricht, 858 F3d 71, 99-100 [2d Cir 2017], cert denied 585 US 1033 [2018]). The supporting affidavit identified the type of evidence likely to be contained in the phone, and the warrant did not lack particularity (see People v Bush, 189 AD3d 643, 644 [1st Dept 2020]). We also find that the examination of the phone which produced the wifi location data was not untimely (see People v Ruffin, 178 AD3d 455, 456 [1st Dept 2019]). But even assuming the warrant was improperly issued or that the examination was untimely, we find these alleged errors to be harmless (see People v Crimmins, 36 NY2d 230 [1975]). The evidence was overwhelming, and included eyewitness testimony, video footage, and defendant's own incriminating statements. Moreover, the evidence introduced at trial obtained from defendant's phone was largely cumulative of other evidence presented placing him in the vicinity of the shooting.
Defendant failed to submit facts sufficient to warrant a hearing as to whether one of the People's witnesses was acting as a police agent when defendant discussed his involvement in the shooting [*2]with that witness (see People v Brooks, 283 AD2d 367, 367 [1st Dept 2001], lv denied 96 NY2d 916 [2001]). The prosecutor represented that the witness in question had stopped acting as an informant more than a year prior to the time defendant made his incriminating statements, due to the witness being arrested, and that the witness did not tell police about defendant's incriminating statements until several years later, during an unrelated conversation. Absent any showing to the contrary, defendant's agency claim was merely based on speculation, and the court's inquiry in this case was sufficient (id.; see also People v Gannon, 174 AD3d 1054, 1060 [3d Dept 2019], lv denied 34 NY3d 980 [2019]; People v Grisafi, 192 AD2d 147, 150 [4th Dept 1993], lv denied 82 NY2d 925 [1994]).
We also find that the court providently exercised its discretion in denying defendant's request to recall one of the People's witnesses, as the proposed additional cross-examination would have minimal, if any, impeachment value (see People v Crawford, 39 AD3d 426, 427 [1st Dept 2007], lv denied 9 NY3d 864 [2007]; People v Alicea, 33 AD3d 326, 327-328 [1st Dept 2006], lv denied 7 NY3d 923 [2006]). Defendant had cross-examined this witness at length. The witness did not see the shooting, and the witness's prior concern that an individual named Elliot may have left the gun used in the shooting at his apartment was based on rumors he had heard. Ultimately, the witness testified that he believed that someone named Andrew had left a gun in his apartment, and evidence was presented that the gun recovered did not match the caliber of the one used in the shooting. In any event, we find any alleged error to be harmless in light of the overwhelming evidence of defendant's guilt and the lack of probative value of the purported prior inconsistency.
Defendant's current challenges to the prosecutor's comments in summation are unpreserved because defendant either failed to object, made only general objections, or failed to request further relief after the court sustained his objections (see People v Romero, 7 NY3d 911, 912 [2006]), and we decline to consider these unpreserved challenges in the interest of justice. As for the challenges which are preserved, we find that the prosecutor did not improperly vouch for witnesses, mischaracterize the evidence, or shift the burden of proof, but responded to the defense summation with record-based arguments. As an alternative holding, we find no basis for reversal (see People v D'Alessandro, 184 AD2d 114, 118-120 [1st Dept 1992], lv denied 81 NY2d 884 [1993]).
We find no merit to defendant's claim that additional errors deprived him of his right to a fair trial. Contrary to defendant's contention, the court had a sufficient basis to qualify one of the People's witnesses as an expert on cell tower connectivity. There was also an adequate basis to allow testimony regarding the statement made by the victim that defendant shot him. This statement qualified [*3]as a dying declaration (see People v Nieves, 67 NY2d 125, 132-133 [1986]). Finally, we find nothing coercive about the court's instructions to the jury to continue deliberations, following a communication from the jury that it had reached an impasse as to certain counts of the indictment. Given this, the court providently exercised its discretion in issuing an Allen charge (see
People v Rowser, 139 AD3d 489, 489-490 [1st Dept 2016], lv denied 28 NY3d 936 [2016]).
We perceive no basis to reduce defendant's sentence.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 31, 2024